IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **Jamie C. Cade**, | ) | Civil Action No.  2:11-3498-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Michael J. Astrue, Commissioner of** | ) | |
| **Social Security Administration**, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

   This action was filed by the Plaintiff pursuant to the Rehabilitation Act of 1973, 29

U.S.C. § 701, <u>et</u>. <u>seq</u>.; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et</u> <u>seq</u>.

Plaintiff, a former employee of the Defendant, alleges that she was discriminated against by the

Defendant on the basis of a disability, and that she was also unlawfully retaliated against after having

engaged in protected conduct, all in violation of the cited statutes.

   The Defendant filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P., on September 24, 2013.  After receiving an extension of time to reply, Plaintiff filed

a memorandum in opposition to the Defendant's motion on December 11, 2013.  The Defendant filed

a reply to the Plaintiff's response, to which the Plaintiff filed a sur reply on January 10, 2014.  The



Defendant's motion is now before the Court for disposition.[1]

### Allegations of the Complaint

Plaintiff alleges in her Amended Complaint that she was hired by the Defendant as an attorney advisor under the Federal Career Intern Program (FCIP) on February 22, 2010. Plaintiff alleges that her primary duty consisted of preparing written decisions or orders to be issued by administrative law judges. Plaintiff alleges that her first line supervisor was Joyce Simmons, and that Hearing Office Director (HOD) Rick Schmidt also had authority over the administrative staff in the offices where Plaintiff was employed.

Plaintiff alleges she suffers from learning disabilities, and that this was disclosed to her supervisor in July 2010. Plaintiff further alleges that she requested at that time to be provided with a reasonable accommodation in the form of additional time to perform her duties, but that rather than receiving an accommodation, she began to receive harassment about her work. Plaintiff alleges that despite "minimal assistance" from an assigned mentor and no assistance from her supervisor, she continued "to work diligently at learning and performing the various aspects of her duties," and "perform her duties well".

Plaintiff alleges that she was issued her first performance assessment (PACS) in November 2010, and that despite "the harassment and the absence of the requested reasonable accommodation", she achieved a successful performance rating. However, Plaintiff alleges that following her PACS meeting in November 2010, she was told that she was not working fast enough and was not meeting a previously unidentified quota of which Plaintiff had no knowledge. Plaintiff

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



alleges that her employment was thereafter "further imperiled" when, in January 2011, she decided to make a complaint of sexual harassment against two administrative law judges who were responsible for supervising her work, based on an incident that had occurred in April 2010. Plaintiff alleges that she contacted an Equal Opportunity Officer in January 2011 to make a complaint about the adverse conditions to which she believed she had been subjected, including sexual harassment and failure of the Defendant to act upon her request for a reasonable accommodation, and that even though she was informed that her complaint would remain anonymous, the fact that she had filed it was brought to the attention of the two judges.

Plaintiff alleges that in January 2011, she was informed by her supervisors that the Defendant's "policy" required her to produce one unfavorable decision, and one favorable decision, per day. Plaintiff alleges that she requested, but was never provided with, a copy of this alleged policy. Plaintiff alleges that she met with her supervisors on January 5, 2011 to explain that she felt she needed a new supervisor, and to also ask about the status of her request for reasonable accommodation. Plaintiff alleges that both requests were denied. Plaintiff alleges, however, that eventually she was provided with a new supervisor, but that her request for a reasonable accommodation continued to be denied. Plaintiff alleges that she was subsequently informed in February 2011 that her superiors were not willing to resolve her complaint, following which she then filed a formal complaint alleging sexual harassment and discrimination on the basis of a disability.

Plaintiff also alleges that it was her understanding that under the provisions of the FCIP, she would be converted to career conditional employment after March 1, 2011, provided she was doing the job she was hired to do and as outlined in the job vacancy announcement. Thereafter, and after one year of service, Plaintiff would be promoted to a GS-11. However, Plaintiff alleges



that at least three other non-disabled employees who began employment at the same time as Plaintiff received their promotions with no further evaluations at the one year mark, while she did not. Specifically, Plaintiff alleges that in mid February 2011 she anticipated notification of her promotion to GS-11, and learned that her peers who had been hired the same time had received notification that they were being upgraded. However, on March 4, 2011, Plaintiff instead received notification that she had received a step increase to a GS-9, Step 2. Plaintiff alleges that she immediately sent an email to her supervisors, and that on March 9, 2011 she received notification that she had indeed been promoted to a GS-11, and that a copy of her SF-50 noting her promotion to GS-11 was available on line. However, Plaintiff alleges that on or around March 15, 2011, she received another notification stating that her promotion to GS-11 had been cancelled.

Plaintiff alleges that when she inquired about this cancellation, she was informed that the promotion had been done "in error", and that her performance was "under review". Plaintiff alleges that she was thereafter summarily terminated from her employment on March 31, 2011, having never been provided with any results of the alleged performance review. Plaintiff alleges that she was presented with an ultimatum to either resign, or she would be terminated, and that when she refused to resign she was terminated. Plaintiff alleges that following her termination, she filed a complaint of discrimination with the appropriate Equal Employment Opportunity Division of the Social Security Administration, and that after she received notice of the SSA's final decision denying her complaint and request for relief on or around September 30, 2011, she filed this lawsuit.

In her **First Cause of Action**, Plaintiff alleges that the Defendant failed to provide her with a reasonable accommodation for her disability in violation of the Rehabilitation Act. In her **Second Cause of Action**, Plaintiff alleges that by requesting a reasonable accommodation and in

4



opposing Defendant's failure or refusal to provide her with a reasonable accommodation, she engaged in protected activity, and that the termination of her employment was in retaliation for her having engaged in protected activity, all in violation of the Rehabilitation Act.  In her **Third Cause of Action**, Plaintiff alleges that she engaged in protected activity when she made her complaint about sexual harassment, and that she was thereafter subjected to an adverse employment action in retaliation for having engaged in this protected activity, in violation of Title VII.  Plaintiff seeks declaratory and/or injunctive relief, as well as monetary damages.  <u>See</u> <u>generally</u>, <u>Amended Complaint</u>.

### Discussion

The Defendant has moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving judgment on the pleadings is appropriate.  <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).  Nonetheless, in analyzing Plaintiff's claims, the facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



# I.

## (Exhaustion of Remedies)

Defendant initially argues that Plaintiff's reasonable accommodation claim fails because she did not exhaust her administrative remedies prior to asserting this claim in this lawsuit. Defendant correctly notes that Plaintiff may assert in this lawsuit only those discrimination claims stated by the Plaintiff in her charge of discrimination or reasonably related to those claims. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see also Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [Exhaustion requirement is a jurisdictional prerequisite to adjudication in federal court]; Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005)[Noting that the purpose of an administrative charge is to provide notice to an employer of the discimination alleged and to give the parties the opportunity to resolve the claims asserted]. Plaintiff argues, however, that her reasonable accommodation claim *was* raised and administratively exhausted, and is therefore properly before this Court for review.

The evidence before the Court reflects that Plaintiff initiated EEO counseling on January 25, 2011, in which Plaintiff did raise, inter alia, a claim based on reasonable accommodation. See Plaintiff's Exhibit 13 (EEO charge dated January 25, 2011). On January 31, 2011, Plaintiff was provided with a copy of the EEO counseling report setting forth the efforts that had been made to resolve Plaintiff's complaint, and advising her that she had a right to file a formal complaint of discrimination, which would need to be filed within fifteen (15) calendar days from the day of her receipt of the final report. Plaintiff acknowledge receipt of the final counseling report on February 15, 2011. Id., (Court Docket No. 33-14, pp. 6-7). Plaintiff thereafter filed a formal charge of discrimination on February 16, 2011, and on April 4, 2011 a final decision was issued by the SSA



dismissing Plaintiff's claims.    Specifically with respect to Plaintiff's claim for reasonable accommodation, the decision found that the alleged incidents of discrimination had occurred beyond the forty-five (45) day regulatory time frame for initiating counseling with EEO counselor, and this claim was therefore dismissed for failure of the Plaintiff to initiate counseling in a timely manner. See Plaintiff's Exhibit 14.

Plaintiff was advised that she could pursue an administrative appeal of this decision within thirty (30) days, or she could seek judicial relief by filing a civil action in U. S. District Court within ninety (90) days.  Id.  Plaintiff did not file an administrative appeal, and this federal lawsuit was not filed until December 22, 2011, well after the expiration of her ninety (90) day deadline for pursuing judicial relief.    See Court Docket No. 1.    Therefore, this administrative charge of discrimination cannot be a basis for establishing jurisdiction in this Court for Plaintiff's reasonable accommodation claim.  Ruiz v. Donahue, _____ Fed. Appx. ___, 2014 WL 2153910 at * 3 (5th Cir. May 23, 2014) [Noting that federal employees must both exhaust their administrative remedies and then timely file their law suit as the second criteria, and that "[f]ederal subject matter jurisdiction does not exist unless both of these requirements are met."].

The evidence reflects that Plaintiff also filed a second EEO administrative complaint on or about April 15, 2011.  In this administrative complaint, Plaintiff alleged that the cancellation of her promotion to GS-11 and subsequent termination were retaliation for her having engaged in protected activity (i.e., her prior EEO activity).  See Defendant's Exhibit 1 (Court Docket No. 26-2, pp. 2,7).[2]  Plaintiff's retaliation  ("reprisal") claim was denied in a final Agency decision issued

---

[2]The charge relating to Plaintiff's termination was apparently added on May 18, 2011.  Id. (Court Docket No. 26-2, p. 7).  These administrative charges were assigned two separate charge numbers (ATL-11-0435-SSA and ATL-11-0468-SSA), but were consolidated for agency review.
(continued...)



September 27, 2011.  See Defendant's Exhibit 2.  The final decision discusses Plaintiff's previous EEO complaint, which included her claim that she did not receive reasonable accommodation, clearly identifying the filing of that earlier EEO complaint as Plaintiff's protected activity for purposes of her retaliation claim.  However, it is readily apparent that Plaintiff's second EEO administrative charge was presented, and investigated, solely as a retaliation claim.  Id.

In determining the scope of Plaintiff's exhausted claims, the Court is bound by the scope of Plaintiff's claims as they are set forth in her administrative charge, and only those discrimination claims sets forth in the administrative charge and reasonably related thereto or were developed by a reasonable investigation of the claim set forth in the original charge may be maintained in a subsequent lawsuit.  Bryant v. Bell Atlantic MD., Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans, 80 F.3d at 963; Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009); see also Coleman v. Pennsylvania State Police, ___ Fed. Appx. ___, 2014 WL 1064379 at * 3 (3d Cir. Mar. 20, 2014) [Same standards applied under ADA apply to Rehabilitation Act]; Russell v. Lew, 549 Fed. Appx. 389, 394 (6th Cir. Dec. 13, 2013) [In a suit involving a federal employee bringing an action under the Rehabilitation Act, the Court found that the same standards that govern ADA claims generally apply].  "Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe [the administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely . . . charge".  Dorsey v. Pinnacle Automation, Co., 278 F.3d 830, 838 (8th Cir. 2002)(internal quotation marks and citations omitted).

Here, while Plaintiff had filed an *earlier* administrative charge in which she asserted

---

[2](...continued)
See Defendant's Exhibit 2 (Court Docket No. 26-4, p. 1).



a reasonable accommodation claim, Plaintiff neither pursued an administrative appeal of the final Agency decision with respect to that administrative claim, nor did she timely file a lawsuit based on that administrative claim. Therefore, as previously noted, Plaintiff cannot use that earlier administrative charge as a jurisdictional basis for proceeding with a reasonable accommodation claim in this lawsuit. Mayes v. Potter, No. 2-18, 2003 WL 23220738 at * 5 (W.D. Mich. May 22, 2003) [Plaintiff cannot resurrect old EEOC claims on which he failed to timely file a complaint]. With respect to her administrative charge on which this lawsuit is predicated, that administrative charge clearly only asserts claims from retaliation, and does not set forth a separate claim for disability discrimination under the ADA or Rehabilitation Act. See Defendant's Exhibit 1.

A retaliation claim is a wholly separate and distinct claim from a discrimination claim. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222-223 (8th Cir. 1994) [Noting that a discrimination claim is separate and distinct from a claim of retaliation, and finding that the fact that Plaintiff cited her earlier discrimination claim as the basis for her subsequent retaliation claim was not enough to allow her to resurrect her earlier discimination claim on which she had failed to timely file a lawsuit]. Therefore, Plaintiff's First Cause of Action in her Amended Complaint asserting a claim of discrimination based on the Defendant's alleged failure to provide her with a reasonable accommodation for her disability must be dismissed. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred]; Davis v. Vilsack, 880 F.Supp. 2d 156, 160-161 (D.D.C. 2012) [The statutorily mandated time limitation for a covered federal employee "aggrieved by the final disposition" of an employment discrimination complaint runs 90 days from when the employee receives notice of the final action]; Sutton v.

9



Donahoe, Nos. 11-5912, 11-5961, 2012 WL 2863559 at * 1 (N.D.Ill. July 11, 2002)[Federal

employee's claims are subject to 90 day filing requirement]; Williams, 21 F.3d at 222-233.[3]

## II.

### (Retaliation Claims)

In her Second Cause of Action, Plaintiff alleges that the Defendant terminated her

employment because she complained about the Defendant's failure to provide her with a reasonable

accommodation for her disability.   This claim is asserted under the Rehabilitation Act, which

incorporates for federal employees the protections set forth in Title I of the Americans with

Disabilities Act (ADA), 42 U.S.C. § 12111, et seq.   See 29 U.S.C. § 794.   In her Third of Cause of

Action, Plaintiff alleges that the Defendant retaliated against her by subjecting her to an "adverse

---

[3]It is arguable that, under some limited circumstances, administrative exhaustion of remedies is not a jurisdictional prerequisite to the bringing of a suit in federal court, but is instead a requirement subject to waiver, estoppel, and equitable tolling.   See Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1983).   However, the Defendant clearly has not waived this defense, and Plaintiff has presented no cogent argument for why the Defendant should be estopped from asserting this defense.   Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992)[Equitable relief is reserved for only the most deserving complainants, usually where there exists affirmative misconduct],   vacated on other grounds, 113 S.Ct. 1940 (1993); Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002) ["The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case."].   In any event, Zipes refers to the untimeliness of an administrative charge; Zipes, 455 U.S. at 393; see also Davis v. North Carolina Dep't. of Corrections, 48 F.3d 134, 140 (4th Cir. 1995); and the Defendant's argument here does not rest on the timeliness of the filing of the administrative charge; rather, it rests on the fact that Plaintiff failed to timely file a federal lawsuit after dismissal of her first EEO charge, and did not assert in the administrative charge after which this lawsuit was filed the accommodations claim that she now wishes to assert.   Plaintiff may not resurrect her previously unappealed accommodations claim by including it in a lawsuit based on an EEO charge that did not include this claim, as a "failure by the Plaintiff to exhaust administrative remedies concerning a Title VII [or ADA] claim deprives the federal courts of subject matter jurisdiction over the claim."   Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009); see also Williams, 21 F.3d at 222-223.



employment action" after she complained about sexual harassment, in violation of Title VII.[4]

While asserted under separate statutes, however, both of these retaliation claims are subject to the same requirements of proof as are applicable to Title VII disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); see also Caldwell, 289 Fed. Appx. at 590-592 [The anti-retaliation standard for Title VII retaliation calms brought by private employees also applies to federal employees]; Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995) [Rehabilitation Act is interpreted using the law applicable to ADA claims]; Silk v. City of Chicago, 194 F.3d 788, 799 (7th Cir. 1999) [Retaliation claims under the ADA are analyzed under the same burden - shifting framework set forth for Title VII claims]. The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-

---

[4]While Plaintiff cites 42 U.S.C. § 2000e-3 as being the basis for this Title VII claim, that code section applies to retaliation against employees in the private sector. Title 42 U.S.C. § 2000e-16(a) is the code section that provides for a retaliation claim by a federal employee. Caldwell v. Johnson, 289 Fed. Appx. 579, 592 (4th Cir. Aug. 15, 2008)[Discussing federal employee retaliation claims that arise under 2000e-16(a)]; see also Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011)["Although neither the Supreme Court nor our court has squarely addressed whether 2000e-16(a) prohibits retaliation . . . reading these provisions together leaves us little doubt that Congress 'incorporated the protections against retaliation" afforded to private employers by 2000e-3(a).'"](quoting Ayon v. Sampson, 547 F.2d 446, 450 (9th Cir. 1976)(other internal citations omitted); see also Grosdidier v. Broadcasting Bd. of Govenors, Chairman, 709 F.3d 19, 23 (D.C.C. 2013)[Title VII's prohibition on employer retaliation applies to federal employers through §2000e-16]; Wiggins v. Secretary, Dep't of the Army, 520 Fed.Appx. 799, 800 (11th Cir. May 29, 2013)[same].



discriminatory reason for its actions.  If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextual. Id.

For purposes of summary judgment, the Defendant has not contested Plaintiff's prima facie case.  See Defendant's Brief, p. 24; see also Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous].  Defendant does argue, however, that it has set forth a legitimate, nondiscriminatory reason for its employment decisions, and the undersigned agrees.  Specifically, the Defendant has presented evidence to support its argument that Plaintiff was having problems preparing proper drafts of decisions, that her work product was not improving, that Office Director Schmidt believed Plaintiff was having "serious" problems drafting opinions, and that several ALJs had complained about Plaintiff's writing and analytical abilities.  Defendant has further submitted evidence to support its claim  that Plaintiff was also taking inordinately long amounts of time to produce this unacceptable work product. See generally Schmidt Deposition, pp. 39-40, 60-62, 71-72, 91-92; Simmons Deposition, pp. 63-67; Brown Deposition, pp. 43-46, and attached Exhibits 11 and 12; Julian Deposition, pp. 84-85, 96; see also Defendant's Exhibit 1, at pp. 135-141, 164, 237-239, 310-328, 356, 366-368; Defendant's Exhibit 5, pp. 58, 699-701.

This evidence is sufficient to establish a legitimate, nondiscriminatory reason for the Defendant's actions in not giving Plaintiff a promotion and ultimately terminating her employment. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion].  Therefore, Plaintiff must present evidence of pretext in the making of these decisions in order to



12

avoid summary judgment on her retaliation claims.

In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to retaliate against her because of her having engaged in protected activity, she would not have been subjected to the employment actions at issue. EEOC, 955 F.2d at 941; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234 (4th Cir. 1991); see also University of Texas Southwest Medical Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013) [The evidence must be sufficient to give rise to an inference that, "but for" the protected activity, the adverse action would not have occurred].  Discerning an employer's motives in a case like this is always difficult, as it is the rare employer who is so unwise as to make incriminating statements concerning its motivation so as to provide a plaintiff with concrete evidence to support their claim.  Thus, the law provides that  evidence derived from circumstances and inferences may be used to support a claim. LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993) ["Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'"](citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff was hired by the Defendant to be a "decision writer" in the ODAR Hearing Office effective February 22, 2010.  Schmidt Deposition, p. 41.  Decision writers are responsible for drafting ALJ decisions in social security benefits cases.  Plaintiff was hired after a telephone interview, and testified that she was not given any training after she was hired other than being provided some



videos to watch and being provided with some "canned" language to use in draft ALJ decisions. Plaintiff's Deposition, pp. 47-48. Plaintiff was also given a copy of the "PACS Performance Plan", which discusses the learning process and the need to maintain interpersonal skills, and spent one or two afternoons with the Chief Administrative Law Judge and Director Schmidt "just going over all of the paperwork". Id., p. 49; see Plaintiff's Exhibit 3-A.

    Plaintiff testified that shortly after her hiring, she embarked on her duties under the supervision of her assigned direct Supervisor, Joyce Simmons. Plaintiff's Deposition, p. 60; see also Schmidt Deposition, p. 35. Schmidt testified that during the initial months of any new attorney hire's employment, they would get the easier cases and that he would review their work product and discuss with these new hires any issue that he saw, if any, in their writing. Schmidt Deposition, pp. 41-42. Plaintiff does not dispute that she initially experienced some difficulty with reading and interpreting hand written instructions from the ALJs, and that when this happened she would seek assistance from colleagues in the office or from the ALJs themselves. Plaintiff's Deposition, pp. 74-79, 83-85. However, there is no evidence to show that the Plaintiff was not, or that the Defendant did not believe, she was adequately performing her job. Schmidt testified that he had no records of any counseling that may have been given to the Plaintiff during this period of time, or for any of the other new attorney hires, nor were the group supervisors required to keep documentation at that time. Schmidt Deposition, pp. 40, 43.

    In the summer of 2010, Plaintiff advised the Defendant that she suffers from a learning disability combined with Attention Deficit Hyperactivity Disorder and Dyslexia, and asked for an accommodation, specifically with respect to handwritten, often times illegible, instructions and notes she was required to decipher. Plaintiff's Deposition, pp. 118-119; Scott Deposition, pp.



79-80; <u>Defendant's Exhibit 15</u>.  In October 2010, Plaintiff provided Chief ALJ James Scott with medical documentation of her condition.  <u>Scott Deposition</u>, pp. 79-80, and attached <u>Exhibit 1</u>.  Scott forwarded Plaintiff's request to the Defendant's general counsel's office.  <u>Scott Deposition</u>, pp. 79-80.  The following month, on November 22, 2010, Plaintiff received a PACS Performance Appraisal from her Supervisor, Joyce Simmons.  <u>See</u> <u>Defendant's Exhibit 1</u>, p. 222.  Simmons noted in this performance appraisal that the previous month Plaintiff had completed formal decision writers' training in St. Louis, Missouri, and that she should continue to seek assistance when and where needed to help her produce a "fair share" of the decisions.  While Plaintiff expressed some discomfort with Simmons' "fair share" comment "in light of [her] disabilities", she signed the appraisal, although she reiterated to Simmons and in the PACS performance plan itself that she had learning disabilities which she believed were covered under the ADA, and that any and all references to completing work within a specified time frame needed to reflect that fact.  <u>Id</u>., p. 221.  Simmons rated Plaintiff as having a "successful" work performance, noting that with respect to her interpersonal skills Plaintiff had "been consistent in maintaining positive working relationship within the office and group".  Simmons gave Plaintiff a final rating level of 3.  <u>Id</u>., p. 222.

   In December 2010, Plaintiff contacted an EEO counselor to complain that she believed she had been sexually harassed[5] by Chief Judge Scott and another ALJ, Thomas Henderson, during an encounter at a local restaurant back in April 2010.  <u>Plaintiff's Deposition</u>, pp. 86-98; <u>Scott Deposition</u>, pp. 105-106.  Plaintiff thereafter obtained her EEO counseling report, in which she complained both about not receiving an accommodation for her disability and about the alleged sexual harassment, on January 25, 2011.  <u>See</u> <u>Plaintiff's Exhibit 13</u>.  Plaintiff also complained to the

---

   [5]Plaintiff also at that time complained about race discrimination.  <u>Plaintiff's Exhibit 13</u>, p. 3.  However, Plaintiff is not pursuing a race discrimination claim in this lawsuit.



interviewer in this initial counseling report that she believed Judge Scott had requested that she no longer write for him.  Plaintiff's Exhibit 13, p. 3.

Both Scott and Henderson were notified in January 2011 of Plaintiff's complaint against them. Scott Deposition, p. 104-105; Henderson Deposition, pp. 35-36. Plaintiff testified that thereafter Judge Henderson "started finding severe problems with my decision writing", and that on one occasion had even written on a manila sheet that Plaintiff's writing was "boring and pointless and all kinds of things". Plaintiff's Deposition, p. 85.  In the EEO counseling report issued January 31, 2011, the investigator reported that Plaintiff's new Supervisor, Deborah Julian,[6] had previously been unaware of Plaintiff's request for reasonable accommodations, and that she would need speak with her [Julian's] supervisor prior to responding to this request.  The investigator then stated that Julian had gotten back with her and told her that she could not grant Plaintiff's request for reasonable accommodation.  See Plaintiff's Exhibit 13.

It is undisputed that Plaintiff was eligible for a career ladder promotion from GS-9 to GS-11 on or about February 22, 2011, and the Human Resources Office sent an email to Plaintiff's superiors on March 3, 2011 notifying them that several employees, including the Plaintiff, were "due their Career Ladder Promotion effective 02/27/2011", and asking them to forward an FPPS[7] unless they were going to withhold the promotion.  Plaintiff's Exhibit 7.  Thereafter, Plaintiff was notified by Human Resources that her career ladder promotion had been processed with an effective date of February 27, 2011.  See Plaintiff's Exhibit 8.  However, on March 10, 2011, Schmidt sent Human Resources an email telling them that Plaintiff's promotion was "explicitly not approved and not

---

[6]Julian had replaced Joyce Simmons as Plaintiff's supervisor as of January 10, 2011. Plaintiff's Exhibit 13, p. 6.

[7]The form authorization for this promotion.

16



authorized by our hearing office", and asking if there was any possible way that this action could be rectified to place Plaintiff back at a GS-9. This email was sent "confidential", with Schmidt stating that it involved "an extremely sensitive [labor management relations] issue". See Plaintiff's Exhibit 9.

Schmidt testified that personnel had taken it "upon themselves to promote [Plaintiff]", and stated that he had had to "jump in" and tell them not to proceed because he was preparing to terminate her. Schmidt testified that he had told Human Resources he did not want her promoted when he received the first email of March 3, 2011; however, the Defendant has cited to no emails or written communications to verify this claim. See also Schmidt Deposition., p. 76. Further, while Schmidt testified that he made the decision to terminate Plaintiff because of her poor performance, he had nothing to show that she had ever been counseled for poor performance. Schmidt Deposition, p. 43. Similarly, Simmons testified that, other than the performance appraisal of November 2010 (on which Plaintiff had received the highest grade possible), she performed no other performance evaluation on the Plaintiff. Simmons Deposition, pp. 56, 60. Plaintiff's new supervisor, Julian, had also not given Plaintiff a formal performance appraisal of her work. Julian Deposition, p. 80. See Lloyd v. Georgia Grill Corp., 961 F.2d 1190, 1195 (5th Cir. 1990) [Holding that when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext].

It is also noted that on the copy of the original March 3, 2011 email from Human Resources provided by the Defendant in discovery, there are handwritten notations next to the individual's names who are eligible for promotion. These handwritten notations fall under a column headed "prior EEO", followed by a listing of either "yes" or "no" next to the individual's name.



Plaintiff is the only employee with "yes" next to her name, indicating that she was the only employee who had initiated an EEO complaint against the Defendant. See Plaintiff's Exhibit 7; see also Defendant's Exhibit, (attached to Reply Memorandum), at Court Docket No. 35-1.[8] The other employees, who had not initiated any EEO action against the Defendant, received their promotions. Schmidt Deposition, pp. 78-79. Plaintiff did not.

In response to Schmidt's email, Sharon Silmon of the Management Operations Branch advised that she was not "aware that it was an issue", with a "CC" to Human Resources asking them to please cancel Plaintiff's promotion "due to" her labor/management issue, again stating that she "was not aware that there was an issue with this person". See Plaintiff's Exhibit 10. On that same date, Silmon then sent out a second email two minutes later stating that she had "just learned this employee is going to be terminated". See Plaintiff's Exhibit 11. Plaintiff was thereafter terminated by Schmidt in a letter dated March 31, 2011. See Plaintiff's Exhibit 12. This letter stated that Plaintiff was being terminated because of her "failure to demonstrate that you can satisfactorily perform the duties of the position for which you were hired".

After review and consideration of this evidence, and any inferences that could be drawn therefrom, the undersigned finds and concludes that this evidence is sufficient to survive the Defendant's motion for summary judgment on this claim. Considered in the light most favorable to the Plaintiff, the evidence shows after Plaintiff filed an EEO complaint alleging that she was not

---

[8]As an attachment to its reply memorandum, the Defendant submitted an affidavit from Shawn Glanville, who attests that from June 2007 to October 2011 he was the Equal Employment Specialist in the Defendant's Civil Rights and Equal Opportunity Office for the Atlanta Region. Glanville attests that he is the one who placed the "yes" or "no" notations on the March 3, 2011 email at issue, and that he did so in response to discovery in this case. However, while informative, Glanville's affidavit does not change the import of the information contained in that email; i.e., that the only employee eligible for promotion who did not receive a promotion was also the only employee who had initiated an EEO action against the Defendant.



being provided a disability accommodation to which she was entitled and that she had been sexually harassed by two (2) administrative law judges, the ALJs' criticized her work and/or requested that she no longer be assigned to them, and Plaintiff was told her accommodation request would not be honored.  Plaintiff was thereafter denied a promotion that every other new attorney hire received. Plaintiff was the only member of this group who had made an EEO complaint.  Plaintiff was then terminated based on her purported inability to perform the duties for which she had been hired, even though the only performance evaluation she had received prior to her termination showed that she had been performing her job satisfactorily.  Cf. LeBlanc v. Great American Insurance Co., 67 F.3d 836, 843 (1st Cir. 1993)["Discriminatory intent may be inferred from the totality of the circumstances, including . . . the historical background of the decision . . . ; [t]he specific sequence of events leading up to the challenged decision . . . ; [and] contemporary [actions] by member of the decision making body . . ."] (internal quotations omitted]; see also Chavez v. City of Arvada, 88 F.3d 861, ____ (10th Cir. 1996) [Holding that a retaliatory motive may be inferred when an adverse action closely follows protected activity].

Hence, while the Defendant has for its part submitted substantial evidence to justify the employment decisions taken, the evidence as a whole (considered in the light most favorable to the Plaintiff) is sufficient to require a determination of this claim by the finder of fact.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [A retaliation claim may be established where the Plaintiff has "evidence from which a reasonable fact finder could conclude that a causal connection exists between the protected activity and the adverse action(s)]; see also Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial,



that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-252 (1986); <u>cf</u>. <u>City of Farmington-Hills Employees Retirement System v. Wells Fargo</u>, ___ F.Supp.2d ___, 2013 WL 5230720 at *12 (D.Minn. Sept. 17, 2003)[Denying summary judgment where, "despite the unlikelihood of success at trial . . . [the party seeking summary judgment] neither demonstrated that the [opposing party's claims] fail as a matter of law, nor the absence of any genuine issue of material fact sufficient to warrant summary judgment."]; <u>see</u> <u>also</u> <u>Iannillo v. County of Orange</u>, 187 F.Supp.2d 170, 185 (S.D.N.Y. 2002)[At summary judgment, the Court expresses no view as to a plaintiff's chance of success on the merits of his claim at trial, and bases its decision only on whether there is a material issue of fact as to causation that renders summary judgment inappropriate.].

Therefore, the Defendant is not entitled to summary judgment on Plaintiff's retaliation claims. <u>See</u> <u>LeBlanc</u>, 67 F.3d at 843 ["Direct or indirect evidence of discriminatory motive may do, [as long as] 'the evidence as a whole...[is] sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus]'"]; <u>cf</u>. <u>Lloyd</u>, 961 F.2d at 1195 [Holding that when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext].

## <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted** with respect to Plaintiff's First Cause of Action alleging a reasonable accommodation claim. It is further recommended that Defendant's motion be **denied** with respect



to Plaintiff's Second and Third Causes of Action setting forth retaliation claims.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 7, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



22